**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**Case No. 17-CV-81324-Middlebrooks**

JACKIE BEARD ROBINSON,

Plaintiff,

v.

NBC UNIVERSAL CABLE;
ANDY COHEN;
MELISSA GORGA; and
DOROTHY TORAN,

Defendants.
_________________________________________/

**MOTION TO DISMISS AND TO COMPEL ARBITRATION AND**
**INCORPORATED MEMORANDUM OF LAW**

Defendants NBCUniversal Media, LLC (named as "NBC Universal Cable" and hereinafter "NBCUniversal"), Andy Cohen, Melissa Gorga, and Dorothy Toran (collectively "Defendants"), through their undersigned counsel, respectfully submit this motion to compel arbitration and dismiss the complaint with prejudice, or, in the alternative, to compel arbitration and stay proceedings, pursuant to Rules 12(b)(1) and (3) of the Federal Rules of Civil Procedure and 9 U.S.C. § 1 *et seq*., and incorporated memorandum of law.

1. Plaintiff brings this case in federal court in Florida although she unambiguously agreed to resolve all the claims asserted here in a private mediation or arbitration in New York. Consistent with the strong federal encouraging arbitration, this Court should compel the Plaintiff to abide by her express agreement and arbitrate this dispute.

2. Plaintiff alleges defamation, defamation *per se*, defamation by implication, intentional infliction of emotional distress, and tortious interference with prospective business relationships. These claims all purportedly arise from statements made in conjunction with her appearance in an unscripted docu-series entitled "The Real Housewives of New Jersey" (the "Program"), which airs on the Bravo TV cable network. ECF No. 1, Compl. at Intro.

3. As alleged in the Complaint, Bravo TV is operated by Defendant NBCUniversal. *Id.* ¶ 4. Defendant Andy Cohen is an Executive Producer of the Program, as well as the host of the Bravo TV series "Watch What Happens Live with Andy Cohen." *Id.* ¶ 5. Defendant Dorothy Toran is an Executive in Charge of Production for Sirens Media, a production company that oversees production of the Program. *Id.* ¶ 7. Defendant Melissa Gorga is a cast member of the Program. *Id.* ¶ 6.

4. Plaintiff herself was a voluntary participant on the Program. Indeed, on October 28, 2015, Plaintiff signed an agreement entitled "Appearance Release Form and Arbitration Provision" before she appeared on season seven of the Program. Declaration of Rachel Strom ("Strom Decl."), Ex. A at 1. Then, on or about February 28, 2017, she signed an additional agreement for the Program entitled "Appearance Release Form, Arbitration Provision and Voluntary Participation Agreement" before season sight of the Program ("Agreement"). Strom Decl., Ex. B at 1.[1] Notably, the Agreement relates to the Program as a whole – not to any specific season.

[1] These agreements may be properly considered by the Court on Defendants' motion to compel arbitration. *See, e.g.*, *Ferriol v. Parrillada Las Vacas Gordas, Inc.*, No. 15-20636-CIV, 2015 WL 1968848, at *1 n.1 (S.D. Fla. Apr. 30, 2015) ("This Court may consider the Arbitration Agreements in ruling on a Motion to Compel Arbitration."); *Perera v. H&R Block E. Enters., Inc.*, 914 F. Supp. 2d 1284, 1289 (S.D. Fla. 2012); *Berger v. Accounting Fulfillment Servs. LLC*,

(*footnote continued on next page*)

5.      Plaintiff's participation in the Program spanned two seasons and concerned her business partnership with Gorga. Compl. ¶¶ 16-18; Strom Decl. ¶¶ 3, 5. Until December 2016, Plaintiff and Gorga were business partners in "Envy," a boutique clothing store located in Montclair, New Jersey. *Id.* As alleged in the Complaint, Envy "was an integral part of last season's" Program. *Id.* ¶ 17.

6.      Plaintiff asserts that, after her business relationship with Gorga terminated, she and Gorga had a dispute over the ownership of some property in the store. *Id.* ¶¶ 19-23. Her instant complaints against all of the Defendants concern statements made on the Program or about the Program about that purported dispute. Specifically, Plaintiff alleges that on October 4, 2017, "during the airing of" the Program, Gorga made an allegedly defamatory statement about Plaintiff and Plaintiff's removal of some property at the store. *Id.* ¶ 28. Plaintiff further alleges that, on that same night, on an episode of "Watch What Happens Live," a Bravo TV show that promoted the Program, both Cohen, the host of the show, and Gorga, a guest on the show, discussed what had happened on that night's episode of the Program. *Id.* ¶¶ 29-30. There, Cohen and Gorga, purportedly acting in concert with the other defendants, allegedly made defamatory statements about Plaintiff. *Id.* Plaintiff identifies these statements as the basis for three defamation-based claims, a claim for infliction of emotional distress, and a claim for injury to her business. *Id.* ¶¶ 40-42, 61-63, 79-82, 88-92, 96.

7.      What Plaintiff fails to mention in her Complaint, however, is that her Agreement contains an explicit arbitration clause requiring her to mediate or arbitrate each of her claims against all of the parties. Strom Decl., Ex. B. The Agreement provides:

---

No. 8:16-CV-744-T-30JSS, 2016 WL 3655347, at *3 (M.D. Fla. July 8, 2016), *appeal dismissed*, No. 16-15211-W, 2017 WL 7058070 (11th Cir. Aug. 24, 2017).

> WHERE A CONTROVESY, DISPUTE OR CLAIM ARISES BETWEEN ME, ON THE ONE HAND, AND ONE OR MORE OF THE RELEASED PARTIES, ON THE OTHER HAND, IN CONNECTION WITH MY PARTICIPATION IN THE PROGRAM **(INCLUDING, WITHOUT LIMITATION, THE SCOPE OR APPLICABILITY OF THIS AGREEMENT TO MEDIATE AND ARBITRATE)** (EACH A "DISPUTE") … SUCH DISPUTE SHALL BE RESOLVED BY WAY OF CONFIDENTIAL MEDIATION AND/OR ARBITRATION . . . ADMINISTERED BY JAMS … IN NEW YORK…."

*Id*. ¶ 22 (emphasis added).[2]

8. The "Released Parties" with whom Plaintiff must mediate and arbitrate include all of the Defendants in this action. Specifically, they include Sirens Media, Strom Decl. Ex. B ¶ 1, NBCUniversal, *id*. ¶ 6, and "all other persons and entities participating in connection with the Program or otherwise connected to the Program, … the respective directors, officers, principals, executives, on-air talent, employees … and members of each of the foregoing.," *id*. ¶ 20. The Agreement releases ***all*** claims "directly or indirectly caused by, arising out of, resulting from, or relating to, the Program (including, without limitation, my participation therein and the development, production, distribution or exploitation thereof)," including, without limitation, all claims for defamation and infliction of emotional distress. *Id.* It further provides that it "shall be construed and enforced in accordance with the internal, substantive law of the State of New York," and that "[t]o the extent that the arbitration provisions of this Agreement are not enforced or court proceedings are otherwise required … the parties submit to the *in personam* jurisdiction

[2] Similarly, the 2015 agreement provides that all claims arising out of or related to the agreement shall be subject to confidential mediation and/or arbitration. Strom Decl., Ex. A ¶ 9.

of the Supreme Court of the State of New York in New York County and the United States District Court for the Southern District of New York."[3] *Id.* ¶ 23.

9. Notwithstanding her assent to the Agreement and its terms, Plaintiff has filed the instant suit in federal court in Florida. Every one of her claims in the Complaint arises from statements made on the Program itself or in exploiting the Program. *See* Compl. ¶¶ 16-17, 28-30, 40-44, 61-65, 79, 82, 88, 90, 96. Accordingly, Defendants respectfully request that this Court dismiss this action or, in the alternative, stay this matter and compel Plaintiff to seek binding arbitration pursuant to the terms of the Agreement.

## MEMORANDUM OF LAW

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, establishes a liberal federal policy favoring arbitration agreements. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *Mims v. Global Credit & Collection Corp.*, 803 F. Supp. 2d 1349, 1352 (S.D. Fla. 2011). If a party is "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement," it may petition a federal district court "for an order directing that such arbitration proceed in the manner provided for in [the] agreement." 9 U.S.C. § 4. On a motion to compel arbitration, "the district court is required to determine whether there is a binding agreement to arbitrate and, if so, whether the nonmovant has breached its obligation to arbitrate under that agreement." *Herrera Cedeno v. Morgan Stanley Smith Barney, LLC*, 154

[3] Alternatively, this case should be dismissed pursuant to Fed. R. Civ. P. 12(b)(3) for improper venue, as the parties choice-of-forum and choice-of-law clauses state that all claims are subject to mediation or arbitration in New York (Strom Decl., Ex. A ¶¶ 9-10, Ex. B ¶¶ 22-23). *See Li v. Flyboard Inc.*, No. 12-cv-61323, 2013 WL 12092481, at *2 (S.D. Fla. Mar. 4, 2013) (Middlebrooks) (granting dismissal and quoting *Lipcon v. Underwriters at Lloyd's London*, 148 F.3d 1285, 1290 (11th Cir. 1998)) (dismissing action pursuant to choice of forum clause, "In the Eleventh Circuit, 'motions to dismiss upon the basis of choice-of-forum and choice-of-law clauses are properly brought pursuant to Fed. R. Civ. P. 12(b)(3) as motions to dismiss for improper venue.'").

F. Supp. 3d 1318, 1323 (S.D. Fla. 2016) (citing *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 22 n.27).

In reviewing a motion to compel arbitration, "the court considers three factors: (1) whether a valid written agreement to arbitrate exists, (2) whether an arbitrable issue exists, and (3) whether the right to arbitrate was waived." *McDougal v. Comcast Corp.*, No. 16-81906-CIV, 2017 WL 3726040, at *2 (S.D. Fla. Feb. 24, 2017) (Middlebrooks); *Mercury Telco Grp., Inc. v. Emprese de Telecommunicaciones de Bogota S.A. E.S.P.*, 670 F. Supp. 2d 1350, 1354 (S.D. Fla. 2009) (same). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25, and courts should "rigorously enforce" arbitration agreements. *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004); *see also McDougal*, 2017 WL 3726040, at *2 ("When in doubt, questions of arbitrability should be resolved in favor of arbitration.") (citation omitted). "Thus, as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Emp'rs Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2001).

When the requisite showing is made, "the FAA requires a court to either stay or dismiss a lawsuit and to compel arbitration." *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008). "[D]ismissal of a case in which arbitration has been compelled is appropriate 'in the proper circumstances,' such as 'when *all* the issues raised in ... court must be submitted to arbitration.'" *McDougal*, 2017 WL 3726040, at *6 n.7 (quoting *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992)).

Applying these standards, the Court should enforce the Agreement and compel arbitration of Plaintiff's claims according to the terms of that Agreement.

### A. The Parties Have a Valid Agreement to Arbitrate the Asserted Claims

First, the parties have a valid agreement to arbitrate. All that is necessary to establish an agreement to arbitrate is an agreement, signed by the plaintiff, containing an arbitration provision. *See Herrera Cedeno*, 154 F. Supp. 3d at 1325 (finding valid agreement to arbitrate where the plaintiff "signed and acknowledged that he 'received, read, understood, and agreed' to the terms" of an agreement with an arbitration provision); *Scone Invs., L.P. v. Am. Third Mkt. Corp.*, 992 F. Supp. 378, 381 (S.D.N.Y. 1998) (movants "satisfied their initial burden of demonstrating a written agreement obligating both plaintiffs to arbitrate by producing a copy of the customer agreement which includes an arbitration clause and which was purportedly signed by [the other party]") (citation and internal quotation marks omitted). "'Under such circumstances, the parties have at least presumptively agreed to arbitrate any disputes, including those disputes about the validity of the contract in general.'" *Herrera Cedeno*, 154 F. Supp. 3d at 1325 (quoting *Chastain v. Robinson-Humphrey Co.*, 957 F.2d 851, 854 (11th Cir. 1992)).

Such is what we have here. The Agreement itself is entitled in part "Arbitration Provision." Strom Decl., Ex. B at 1. Plaintiff signed the document and specifically acknowledged that she "had ample opportunity to read, and ha[d] in fact read th[e] entire agreement" and "had an opportunity to review it with an attorney of [her] choice." *Id.* at 7. Plaintiff further acknowledged she was "giving up certain legal rights" under the Agreement, "including, without limitation, [her] right to file a lawsuit in court with respect to any claim arising in connection with this agreement." *Id.*[4] The Agreement provides that all claims

[4] Indeed, under both Florida and New York law, a party who signs or accepts a written contract is presumed to know its contents and to have assented to them. *E.g.*, *Dorward v. Macy's, Inc.*, No. 2:10–cv–669–FtM–29DNF, 2011 WL 2893118, at *6 (M.D. Fla. July 20, 2011)); *Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004).

between the Plaintiff and the released parties that are connected to Plaintiff's participation in the Program "shall be resolved by way of confidential mediation and/or arbitration" in New York.[5] *Id.* ¶ 23. Such unequivocal acknowledgment is sufficient to determine the parties have a valid agreement to arbitrate.

**B. Plaintiff's Complaint Alleges Arbitrable Issues**

Second, Plaintiff's claims clearly fall within the scope of the arbitration clause. As a matter of contract law, the scope of an arbitration agreement is determined by the intent of the parties. *Seaboard Coast Line R.R. Co. v. Trailer Train Co.*, 690 F.2d 1343, 1352 (11th Cir. 1982). Where, as here, the parties "have agreed to arbitrate *some* matters pursuant to an arbitration clause, the law's permissive policies in respect to arbitration counsel that any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration." *Perera*, 914 F. Supp. 2d at 1288 (quoting *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 298 (2010)).

The presumption of arbitrability is particularly applicable to an agreement like the one Plaintiff signed here, where the arbitration clause is broad. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). Indeed, "[f]aced with a valid arbitration agreement,

[5] Notably, appearance releases, such as the Agreement here, are common in the industry and are routinely enforced. *E.g.*, *Nizewitz v. Viacom Int'l*, No. 158209-14, 2015 WL 3401196 (Sup. Ct. N.Y. Cty. Mar. 4, 2015) (dismissing claims based on unambiguous contractual release); *Klapper v. Graziano*, 970 N.Y.S.2d 355 (N.Y. Sup. Ct. Kings Cty. 2013) (dismissing claims where terms of release were "clear and explicit"), *aff'd*, 129 A.D.3d 674 (2d Dep't 2015); *Gelbman v. Valleycrest Prod., Ltd.*, 732 N.Y.S.2d 528 (Sup. Ct. N.Y. Cty. 2001) (claims barred by release); *Weil v. Johnson*, No. 119431/02, 2002 WL 31972157 (Sup. Ct. N.Y. Cty. Sept. 27, 2002) (strictly enforcing documentary appearance release that "appear[ed] valid and binding on [its] face"); *Psenicksa v. Twentieth Century Fox Film Corp.*, No. 07-Civ-10972, 2008 WL 4185752 (S.D.N.Y. Sept. 3, 2008) (enforcing appearance releases to dismiss all claims, including one for fraudulent inducement), *aff'd*, 409 F. App'x 368 (2d Cir. 2009). Arbitration provisions contained in appearance release agreements, like the agreements themselves, are enforceable. *See Guastaferro v. Walt Disney Co.*, No. 600721/2010, 2011 WL 12454520 (Sup. Ct. N.Y. Cty. Mar. 28, 2011).

'[t]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration.'" *McDougal*, 2017 WL 3726040, at *4 (quoting *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 92 (2000)). "[O]nly the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Perera*, 914 F. Supp. 2d at 1288 (citation omitted). The Eleventh Circuit has held that such evidence will be found only if the parties "clearly express their intent to exclude categories of claims from their arbitration agreement." *Paladino v. Avnet Computer Techs., Inc.*, 134 F.3d 1057, 1057 (11th Cir. 1998). The Agreement makes no such express exclusion.

Instead, the plain language of the arbitration clause is unambiguously broad and inclusive. Preliminarily, the Agreement covers claims with each Defendant in this case. Specifically, Plaintiff agreed to arbitrate "[w]here a controversy, dispute or claim arises" between Plaintiff and "one … of the released parties ...." Strom Decl., Ex. B ¶ 22. The released parties explicitly include Sirens and NBCUniversal, as well as their employees and "all other persons and entities" participating or otherwise "connected" to the Program, such as Defendants Cohen, Toran, and Gorga. *Id.* ¶ 20.

Next, all of the alleged claims are covered by the Agreement. The Agreement releases "all claims … and injuries of any kind whatsoever … directly or indirectly caused by, arising out of, resulting from, or relating to, the program (including, without limitation, [her] participation therein and the development, production, distribution or exploitation thereof) …." Strom Decl., Ex. B ¶ 20. That release specifically included all claims arising or sounding in defamation or infliction of emotional distress. *Id.* And, consistent with that broad release, Plaintiff agreed to mediate or arbitrate any claim "in connection with my participation in the program (including,

without limitation, the scope of applicability of this agreement to mediate and arbitrate)." *Id.* ¶ 22.

All five of Plaintiff's claims arise "directly or indirectly" out of the Program and are thus subject to her release. And, the parties were quite clear that any claim between the released parties that was in any way connected to Plaintiff's participation in the show is subject to arbitration. Simply put, Plaintiff agreed to participate in the Program and now complains about some statements that were made about her participation in the Program. Those claims are subject to arbitration.[6]

---

[6] If, for some reason, this Court found that the Agreement does not cover the claims here, the parties agreed that all other claims must be brought in the courts in New York. Thus, this case must still be dismissed. Strom Decl., Ex. B ¶ 23. Alternatively, if this Court found that this Court is the proper forum for this dispute, Defendants would seek dismissal under Rule 12(b)(6) or 12(c) because Plaintiff has failed to state a claim for relief insofar as she has fully released all of her claims against Defendants, which all arise from statements made on the Program or to promote the Program. *See* Strom Decl., Ex. B ¶ 20. Where an agreement releasing claims is unambiguous, a court may properly consider a motion to dismiss for failure to state a claim. *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1312-13 (S.D. Fla. 2014); *Sarria Holdings, Inc. v. Walgreen Co.*, No. 02-23169-Civ., 2003 WL 1528711, at *2 (S.D. Fla. Jan. 31, 2003). "Whether a contract is or is not ambiguous is a question of law to be determined by the trial court." *Ocean Reef Club, Inc. v. UOP, Inc.*, 554 F. Supp. 123, 128 (S.D. Fla. 1982) (citation omitted). Notably, Plaintiff's release agreement could properly be considered on a Rule 12(b)(6) motion to dismiss because the document is "(1) central to the plaintiff's claim; and (2) undisputed." *Welp v. Cigna Health & Life Ins. Co.*, No. 17-80237-CIV, 2017 WL 3263138, at *5 (S.D. Fla. July 20, 2017) (Middlebrooks) (citation omitted). Indeed, failing to consider Plaintiff's release on a 12(b)(6) motion to dismiss "would enable Plaintiff to 'evade dismissal ... simply by failing to attach to [her] complaint a document that proved [her] claim has no merit.'" *Perera*, 914 F. Supp. 2d at 1289 (quoting *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002)). Defendants would also move for dismissal of the Complaint pursuant to Florida's anti-SLAPP statute, Fla. Stat. § 768.295, which provides for early dismissal of claims seeking to stifle fully-protected speech, such as Defendants' here, "made in or in connection with a … television program." Plaintiff's release of all claims would be properly heard on Defendants' anti-SLAPP motion, which also permits the submission of evidence outside the Complaint. *Id.* And, pursuant to the statute, Defendants would seek their attorney's fees in defending Plaintiff's meritless suit. *Id.*

Notably, courts routinely enforce broad arbitration agreements, such as the one here, to cover claims sounding in defamation and tortious interference with business relations. *See, e.g.*, *Mercury Telco Grp.*, 670 F. Supp. 2d at 1356. For example, in *Integrated Security Services v. Skidata, Inc.*, 609 F. Supp. 2d 1323 (S.D. Fla. 2009), the Court enforced an arbitration agreement in a suit alleging tortious interference with contractual relationship and defamation *per se*, finding the parties' broad arbitration agreement, which, like the Agreement at issue here, provided that any dispute between the parties, whether directly or indirectly related to the agreement, controlled and required dismissal of the suit. *Id*. at 1325-26. The court alternatively applied the Eleventh Circuit's "foreseeability" test for determining whether claims are covered by an arbitration agreement. *Id*. (citing *Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.*, 553 F.3d 1351, 1366 (11th Cir.2008)). Under that test, the *Skidata* court similarly concluded that the exceedingly broad release of "all claims" in the pertinent arbitration agreement suggested that the parties contemplated that the tort claims alleged would be subject to the arbitration clause, and they were thus foreseeable at the time the Agreement was made.

So too here. The Agreement broadly provides that a claim with the "released parties" must be resolved by private mediation and arbitration, *see* Strom Decl., Ex. B ¶ 22. It details that released claims with released parties include claims directly or indirectly caused by or related to the Program, including (but not limited to) a variety of tort claims such as defamation, false light, and infliction of emotional distress, *id*. ¶ 20, and then states that all claims connected in any way to Plaintiff's participation in the Program or the scope of the Agreement are subject to Arbitration. There is simply no question that each of Plaintiff's claims is covered by the Agreement's arbitration clause, and therefore, the Court must dismiss this action or compel arbitration on all of Plaintiff's claims.

### C. Defendants Have Not Waived Their Rights to Arbitrate Plaintiff's Claims

Finally, defendants have not waived their right to arbitrate Plaintiff's claims and have instead promptly asserted that the Agreement controls Plaintiff's disputes. Waiver "occurs when a party seeking arbitration substantially participates in litigation to a point inconsistent with an intent to arbitrate and this participation results in prejudice to the opposing party," *Morewitz v. W. of Eng. Ship Owners Mut. Prot. & Indem. Assoc. (Luxembourg)*, 62 F.3d 1356, 1366 (11th Cir. 1995) (citing *Price v. Drexel Burnham Lambert, Inc.*, 791 F.2d 1156, 1158 (5th Cir. 1986)) – but that is not the case here. Instead, Defendants are asking this Court to dismiss this case at the very outset so that the parties can arbitrate any dispute they may have.

Thus, because all of Plaintiff's claims are subject to arbitration this Court should dismiss the action in its entirety and compel Plaintiff to arbitrate her claims. *See, e.g., Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359 (11th Cir. 2005) (affirming dismissal when all claims subject to arbitration); *Samadi v. MBNA Am. Bank, N.A.*, 178 F. App'x 863, 866 (11th Cir. 2006) (district court did not err in dismissing case when arbitration agreement was "broad enough to cover all of [the] claims" presented); *TradeStation Secs., Inc. v. R.J. O'Brien & Assocs.*, No. 12-62435-CIV, 2013 WL 12092207, at *9 (S.D. Fla. May 17, 2013) (Middlebrooks) (dismissing where all claims addressed by applicable arbitration agreement). Alternatively, this Court should stay these proceedings while the parties arbitrate this dispute.

## II. CONCLUSION

WHEREFORE, defendants move this Court to enter an Order dismissing this case with prejudice and compelling Plaintiff's claims to arbitration, or alternatively staying all proceedings pending resolution of such arbitration.

## LOCAL RULE 7.1 CERTIFICATION

Pursuant to Local Rule 7.1(a)(3), the undersigned counsel certifies that counsel for Defendants has conferred with all parties who may be affected by the relief sought in the motion in a good faith effort to resolve the issues raised in the motion and that Plaintiff opposes the relief requested herein.

Date: February 5, 2018

Respectfully submitted,

*/s/ Deanna K. Shullman*
Deanna K. Shullman
Florida Bar No. 0514462
dshullman@shullmanfugate.com
SHULLMAN FUGATE PLLC
2101 Vista Parkway, Suite 4006
West Palm Beach, FL 33411
Tel: (561) 429-3619

Rachel Strom (*pro hac vice* pending)
rachelstrom@dwt.com
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
Tel: (212) 489-8230

Lisa B. Zycherman (*pro hac vice* pending)
lisazycherman@dwt.com
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue, NW
Suite 800
Washington, DC  20006
Tel: (202) 973-4280

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing Motion to Dismiss or Compel Arbitration was served by CM/ECF on February 5, 2018 on all counsel or parties of record on the service list.

*/s/ Deanna K. Shullman*
Deanna K. Shullman

**SERVICE LIST**

Larry Elliot Klayman
Klayman Law Group, P.A.
7050 W. Palmetto Park Rd., #15-287
Boca Raton, FL 33433
Email: leklayman@gmail.com