UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 17-cv-81324-MIDDLEBROOKS

JACKIE BEARD ROBINSON,

    Plaintiff,

v.

NBC UNIVERSAL CABLE, ANDY COHEN,
MELISSA GORGA, DOROTHY TORAN

    Defendants.
_____/

## ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS

THIS CAUSE comes before the Court upon Defendants' Motion to Dismiss, filed February 5, 2018. (DE 12). Plaintiff filed a response on March 22, 2018 (DE 18), to which Defendants replied on April 5, 2018. For reasons stated below, Defendants' Motion is granted.

### BACKGROUND

Plaintiff initiated this action in response to allegedly defamatory statements made about her on an episode of "Watch What Happens Live with Andy Cohen." Plaintiff is an "international fashion influencer," as well as a blogger and style consultant. Defendant Melissa Gorga is a cast member of "The Real Housewives of New Jersey" ("the Program") and a former business partner of Plaintiff's. Defendant NBC Universal Cable operates Bravo TV, a television network that features "The Real Housewives of New Jersey." Defendant Andy Cohen is a talk show personality who hosts the series, "Watch What Happens Live with Andy Cohen." Plaintiff and Defendant Gorga opened a clothing store together called "Envy by Melissa Gorga, LLC" ("Envy"). Envy was "an integral part" of a recent season of "The Real Housewives of New Jersey." Plaintiff voluntarily appeared on the program. On October 28, 2015, in connection with her appearance in season seven of the Program,

Plaintiff entered into an agreement with Sirens Media[1] entitled "Appearance Release Form and Arbitration Provision." (DE 12 ¶ 4). On February 28, 2017, in connection with her appearance in season eight, Plaintiff and Sirens Media signed an additional agreement entitled "Appearance Release Form, Arbitration Provision and Voluntary Participation Agreement" ("the Agreement") (*Id.*). The Agreement contained an arbitration provision, which stated;

> Where a controversy, dispute or claim arises between me, on the one hand, and one or more of the Released Parties, on the other hand, in connection with my participation in the Program (including, without limitation, the scope or applicability of this Agreement to mediate and arbitrate) (Each a "dispute") . . . such dispute shall be resolved by way of confidential mediation and/or arbitration.

The Parties' business relationship eroded and on the morning of January 1, 2017, Plaintiff "went to Envy and gathered all of her belongings." (DE 1 ¶ 19). On October 4, 2017, during the airing of an episode of "The Real Housewives of New Jersey," Defendant Gorga made reference to Plaintiff's gathering her belongings, stating that "Plaintiff snuck in in the middle of the night and took all the clothes." (DE 1 ¶ 28). Later that same evening, during the airing of "Watch What Happens Live with Andy Cohen," Defendant Cohen stated, "wow, so, that lady [Plaintiff] wound up kinda ripping you off?" to which Defendant Gorga responded "yes." (DE 1 ¶ 30). Based on these statements, Plaintiff alleges defamation, defamation *per se*, defamation by implication, intentional infliction of emotional distress, and tortious interference with prospective business relationships against all Defendants. Plaintiff seeks at least $30 million in damages. (DE 1 ¶ 18–19).

Citing the arbitration provision, Defendants move to Compel Arbitration and dismiss this action, or alternatively, to compel arbitration and stay this action pending resolution of the arbitration.

---

[1] Sirens Media is a production company that oversees the production of the Program. (DE 12 ¶ 3).

## LEGAL STANDARD

In considering the instant Motion, the Court applies the federal substantive law of arbitrability, which applies to any arbitration agreement within the coverage of the Federal Arbitration Act ("FAA"). *See Lawson v. Life of the S. Ins. Co.*, 648 F.3d 1166, 1170 (11th Cir. 2011) (quoting *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004)). "The FAA generally provides for the enforceability of 'a contract evidencing a transaction involving commerce.'" *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005) (quoting 9 U.S.C. § 2).

"[T]he FAA requires a court to either stay or dismiss a lawsuit and to compel arbitration upon a showing that (a) the plaintiff entered into a written arbitration agreement that is enforceable under ordinary state-law contract principles and (b) the claims before the court fall within the scope of that agreement." *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008) (quotations omitted). In doing so, the Court addresses its inquiry "with a healthy regard for the federal policy favoring arbitration." *Id.* (quoting *Picard v. Credit Solutions, Inc.*, 564 F.3d 1249, 1253 (11th Cir. 2009)). "The party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Financial Corp. v. Randolph*, 531 U.S. 79, 92 (2000). Further, when in doubt, questions of arbitrability should be resolved in favor of arbitration. *See Moses H. Cone Mem'l Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

## DISCUSSION

The first step of the inquiry is to determine whether "plaintiff entered into a written arbitration agreement that is enforceable under ordinary state-law contract principles." *Lambert v. Austin Ind.*, 544 F.3d 1192, 1198 (11th Cir. 2008). Although Plaintiff concedes that she signed the Agreement, she argues that it is unconscionable, and therefore, unenforceable. "Unconscionability has generally been recognized to include an *absence of meaningful choice* on the part of one of the parties together with contract terms which are *unreasonably favorable to the other party*." *Basulto v. Hialeah Auto.*, 141 So. 3d 1145, 1157–58 (Fla. 2014) (citation omitted). "The absence of meaningful

3

choice when entering into the contract is often referred to as procedural unconscionability, which 'relates to the manner in which the contract was entered,' and the unreasonableness of the terms is often referred to as substantive unconscionability, which 'focuses on the agreement itself.'" *Id.* at 1157–58 (quoting *Powertel, Inc. v. Bexley*, 743 So.2d 570, 574 (Fla. 1st DCA 1999)). "[W]hen a litigant seeks to avoid enforcement of a requirement to proceed with arbitration, pursuant to the parties' prior agreement, the challenging party must establish that the arbitration agreement is both procedurally and substantively unconscionable." *Id.* at 1158.

Plaintiff fails to show either procedural or substantive unconscionability. With regard to procedural unconscionability, Plaintiff simply argues that the Agreement was a contract of adhesion in which she had very little bargaining power. "While a contract of adhesion could indicate procedural unconscionability in some circumstances, 'the presence of an adhesion contract alone does not require a finding of procedural unconscionability.'" *Kendall Imports, LLC v. Diaz*, 215 So. 3d 95, 109–10 (Fla. 3d DCA 2017); *cf. AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346–47 (2011) ("[T]he times in which consumer contracts were anything other than adhesive are long past."). Plaintiff offers no specific facts or argument to show that this particular contract of adhesion is procedurally unconscionable. Therefore, Plaintiff fails to show that the Agreement is unenforceable on that basis.

Next, Plaintiff notes that the Agreement is signed only by Plaintiff and Sirens Media, who is not a party to this litigation. She appears to suggest that because Defendants are not Parties to the Agreement, they cannot enforce the arbitration provision in the Agreement. In *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, the Supreme Court rejected the Sixth Circuit's holding "that nonparties to a contract are categorically barred from § 3 [of the FAA] relief." The Court recognized that state law

4

governs whether a contract is enforceable under § 3[2] and noted that "'traditional principles' of state law allow a contract to be enforced by or against nonparties to the contract through" among other principles, "third-party beneficiary theories." *Id.* at 631.

Under Florida law, "[n]on-parties to a contract containing an arbitration clause cannot compel parties to a contract to arbitrate unless it is determined that they are a third party beneficiary to the contract." *See Florida Power & Light Co. v. Road Ruck, Inc.*, 920 So.2d 201 (Fla. 4th DCA 2006) (citation omitted). "A third party is an intended beneficiary, and thus able to sue on a contract, only if the parties to the contract intended to primarily and directly benefit the third party." *Id.* (citation omitted). "Florida law looks to [the] 'nature or terms of a contract' to find the parties' clear or manifest intent that it 'be for the benefit of a third party.'" *Id.* (citing *Jenne v. Church & Tower, Inc.*, 814 So.2d 522, 524 (Fla. 4th DCA 2002); *see also Smith v. Beverly Hills Club Apartments, LLC*, 2016 WL 344975 (S.D. Fla. Jan. 28, 2016) (finding that the non-signatory defendants could enforce an arbitration provision where the terms of the contract indicated that the parties to the contract intended to benefit the defendants).

Here, the language of the arbitration provision demonstrates the Parties' clear intent to provide Defendants the benefit of the arbitration provision. The arbitration provision covers any "controversy, dispute, or claim [] between me, on the one hand, and one or more of the Released Parties, on the hand." (DE 13-2 ¶ 22). The Released Parties include Sirens Media, as well as "all entities and platforms of NBC Universal Media, LLC," and "all other persons and entities participating in connection with the Program or otherwise connected to the Program, . . . the

---

[2] Section 3 of the FAA provides that "[i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall, on application of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant of the stay is not in default in proceeding with such arbitration."

5

respective directors, officers, principals, executives, on-air talent, employees . . . and members of each of the foregoing." (DE 13-2 ¶¶ 1, 6, 20). Each Defendant appears to qualify as a Released Party, and Plaintiff submits no facts or argument to suggest otherwise. By agreeing to arbitrate any disputes arising between the Released Parties and Plaintiff, the Parties to the Agreement manifested a clear intent to provide the Released Parties with the benefit of that provision.

The second step of the inquiry is to determine whether the claim falls within the scope of the arbitration agreement. *Lambert*, 544 F.3d at 1195. The Parties dispute whether the allegations set forth in the Complaint are covered by the arbitration provision. Without deciding whether Plaintiff's claims are covered by the arbitration provision, it is clear that the Parties' dispute as to whether Plaintiff's claims are covered by the Agreement must be arbitrated as the Parties have delegated that decision to either a mediator or arbitrator. Specifically, the Parties agreed that

> Where a controversy, dispute or claim arises between me, on the one hand, and one or more of the Released Parties, on the other hand, in connection with my participation in the Program (including, without limitation, the scope or applicability of this Agreement to mediate and arbitrate) (Each a "dispute") . . . such dispute shall be resolved by way of confidential mediation and/or arbitration.

(DE 13-2 ¶ 22). "Courts should enforce valid delegation provisions as long as there is 'clear and unmistakable' evidence that the parties manifested their intent to arbitrate a gateway question." *In re Checking Account Overdraft Litig. MDL No. 2036*, 674 F.3d 1252, 1255 (11th Cir. 2012). Here, by signing the Agreement, the Parties unmistakably manifested their intent to arbitrate the gateway question of who decides whether a claim falls within the arbitration provision. Accordingly, it is hereby

**ORDERED AND ADJUDGED** that:

1. Defendants' Motion to Dismiss and to Compel Arbitration (DE 12) is **GRANTED IN PART and DENIED IN PART.**
2. The Parties are compelled to **ARBITRATE** this matter.
3. This action is **STAYED** pending resolution of the arbitration.

6

4. All pending motions in this matter are **DENIED AS MOOT**.

5. The Clerk of Court shall administratively **CLOSE THIS CASE**.

6. The Parties shall file a joint-status report within 14 days after the conclusion of arbitration.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida, this 19 day of April, 2018.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record